UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAKA SHABAZZ, *Plaintiff*, <br><br> v. <br><br> ANGEL QUIROS, *et al.*, *Defendants.* | No. 3:25-cv-65 (VAB) |

## INITIAL REVIEW ORDER

Shaka Shabazz ("Plaintiff") has filed a *pro se* Amended Complaint[1] under 42 U.S.C. § 1983, naming five Defendants for civil rights violations that he alleges occurred when he was detained at New Haven Community Correctional Center. Relevantly, Mr. Shabazz was a pre-trial detainee at the time he filed his original Complaint.[2]

Mr. Shabazz names as Defendants Commissioner Angel Quiros, Warden Christopher Brunelle[3], Disciplinary Coordinator John/Jane Doe, Disciplinary Investigator Bolduc, and Lieutenant Dawson. Mr. Shabazz sues these Defendants in their individual capacities, seeking only monetary damages.

---

[1] Mr. Shabazz filed an initial Complaint on January 10, 2025. *See* Compl., ECF No. 1. He subsequently moved to amend his Complaint on January 29, 2025. *See* Mot. to Amend, ECF No. 11. Because Mr. Shabazz's Complaint has not yet been served, the Court grants his Motion to Amend, ECF No. 11, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. In its initial review, the Court analyzes Mr. Shabazz's Amended Complaint as the operative pleading. Am. Compl., ECF No. 12.
[2] Mr. Shabazz has since been sentenced to a term of eighteen months, and he is now housed at the Willard Correctional Institution. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=168041 (last accessed April 1, 2025); *see also Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).
[3] Warden Brunelle is referenced as both "Brunell" and "Brunelle" in the Amended Complaint. *See* Am. Compl. ¶¶ 5 ("Brunell"), 28 ("Brunelle"). Further, Mr. Shabazz does not identify him as the Warden in his Amended Complaint, but the Court may take judicial notice of orders in this district. *See Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:20-CV-01393 (KAD), 2022 WL 788507, at *5 (D. Conn. Mar. 15, 2022); *Cora v. Gardner*, No. 3:24-CV-1450 (VAB), 2025 WL 744272, at *1 (D. Conn. Mar. 7, 2025) (identifying Defendant as Warden of New Haven Community Correctional Center).

For the following reasons, after reviewing Mr. Shabazz's Complaint under 28 U.S.C. § 1915A(b), Mr. Shabazz may pursue damages from Defendants Bolduc and Dawson in their individual capacities for two of his Fourteenth Amendment due process claims.

Mr. Shabazz's claims related to deliberate indifference to safety under the Eighth and Fourteenth Amendments, his Fourteenth Amendment procedural due process claim related to his disciplinary appeal, his supervisory liability claim against Commissioner Quiros, and his state tort law claims will be dismissed without prejudice.

To the extent that the deficiencies identified in this Initial Review Order can be addressed in a Second Amended Complaint, Mr. Shabazz may file one by **May 30, 2025**. If a Second Amended Complaint is not filed by **May 30, 2025**, any claim dismissed by this Initial Review Order will be dismissed with prejudice.

All claims against Defendants Quiros, Brunelle, and John/Jane Doe in their individual capacities will be dismissed.

I.     FACTUAL AND PROCEDURAL BACKGROUND

On October 1, 2024, a correctional officer at the New Haven Community Correctional Center allegedly woke Mr. Shabazz regarding transportation to a court hearing. Am. Compl. ¶ 9. Mr. Shabazz allegedly knew that he did not have a court hearing on that date. *Id.* He then allegedly refused to go, and received a disciplinary report for failing to report for transport. *Id.* ¶ 10.

The next day—October 2, 2024—Mr. Shabazz allegedly had to attend a meeting concerning this disciplinary report. *Id.* ¶ 11. Disciplinary Investigator Bolduc, allegedly asked Mr. Shabazz how he would like to plead to the charge and whether he had any witnesses, to which Mr. Shabazz allegedly responded that he intended to plead not guilty, and his attorney

would serve as a witness. *Id.* ¶¶ 7, 11. Mr. Shabazz alleges that Investigator Bolduc then said he "did not like him because of his past disciplinary history," that if Mr. Shabazz "thought he would ever win any disciplinary hearing he was wrong," and that he "was very good friends with all the hearing officers and that [Mr. Shabazz] would not even get a chance to speak." *Id.* ¶ 12. Investigator Bolduc also allegedly told him that "all attorneys," including Mr. Shabazz's attorney who would serve as a witness, "are scumbags," and that he would "go light" on Mr. Shabazz, if he pleaded guilty to the disciplinary charge. *Id.* ¶ 13. Mr. Shabazz allegedly refused and left. *Id.*

Sometime between October 2, 2024, and October 17, 2024, Mr. Shabazz allegedly met with a different correctional officer, identified as Advisor Geter. *Id.* ¶ 14. Mr. Shabazz allegedly asked for the evidence to be used against him at the disciplinary hearing, but Advisor Geter allegedly informed Mr. Shabazz that "there was nothing submitted." *Id.* Mr. Shabazz allegedly said that his attorney would be his witness through written testimony. *Id.*

At the October 17, 2024 hearing, Advisor Geter allegedly did not attend and, instead, a different officer, identified as Mr. Salzillo, attended. *Id.* Mr. Salzillo, allegedly Mr. Shabazz's putative representative, neither met with him ahead of the hearing, nor assisted him during the hearing. *Id.* ¶ 15. Lieutenant Dawson allegedly asked Investigator Bolduc if "this is the one?" *Id.* ¶ 16. Investigator Bolduc allegedly said "yeah that's him." *Id.* At that point, Lieutenant Dawson (as hearing officer) then allegedly adjudged Mr. Shabazz guilty of the disciplinary charge and administered sanctions. *Id.*

Mr. Shabazz claims that "no hearing happened"; and that he had no opportunity to speak and, when he inquired of Lieutenant Dawson "how [Lieutenant Dawson] could just find [Mr. Shabazz] guilty without hearing [Mr. Shabazz's] side of the story, Lt. Dawson allegedly said that he did not have to" hear Mr. Shabazz's side. *Id*. ¶ 17. When Mr. Shabazz allegedly asked

3

Lieutenant Dawson why his attorney's statement had not been considered, Lieutenant Dawson allegedly told him that his attorney had not submitted a witness statement and that his attorney had "lied to him." *Id.* ¶ 18.

Despite Lieutenant Dawson's claim, Mr. Shabazz allegedly heard that his attorney did submit a witness statement, which Mr. Shabazz attached to his Amended Complaint. *Id.* ¶ 19. Mr. Shabazz allegedly appealed the decision on his disciplinary charge later that day, and allegedly has not yet received a decision on his appeal. *Id.* ¶ 21. The Disciplinary Coordinator, a John/Jane Doe Defendant, allegedly impeded his rights by failing to respond to his appeal. *Id.* ¶ 22.

Later in the evening of October 17, 2024, an unidentified inmate allegedly attacked Mr. Shabazz in his cell. *Id.* ¶ 26. No correctional personnel, including the named Defendants, although allegedly in the vicinity at the time, allegedly made any effort to stop it. *Id.* ¶¶ 27-28. Mr. Shabazz allegedly had to defend himself against the attack. *Id.* ¶¶ 28-29.

After the attack, Mr. Shabazz allegedly had been placed in restrictive housing, after being issued a disciplinary report for fighting, even though he allegedly was the victim, and the named Defendants allegedly failed to protect him. *Id.* ¶ 30. On October 21, 2024, Investigator Bolduc allegedly threatened to find Mr. Shabazz guilty of the disciplinary charge for fighting, and so Mr. Shabazz allegedly pleaded guilty, despite his alleged innocence. *Id.* ¶ 32.

Mr. Shabazz allegedly has suffered loss of sleep and appetite, and mental and emotional anguish because of Defendants' actions. *Id.* ¶ 34.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is

4

frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III. DISCUSSION

The Court construes Mr. Shabazz's Amended Complaint as alleging claims for procedural due process violations under the Fourteenth Amendment and deliberate indifference to safety under the Eighth and Fourteenth Amendments.[4]

The Court will address each of these claims in turn:

### A. The Fourteenth Amendment Procedural Due Process Claim

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The procedural due process analysis considers (1) "whether there exists a liberty or property interest of which a person has

---

[4] The Court limits its initial review under 28 U.S.C. § 1915A to Mr. Shabazz's federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

Mr. Shabazz makes reference to general tort claims. To the extent that Mr. Shabazz brings state tort claims, *see* Am. Compl. ¶ 36, the Court dismisses those claims as undeveloped, *see Burke v. Lamont*, No. 3:22-CV-475 (OAW), 2022 WL 3997549, at *14 (D. Conn. Sept. 1, 2022) ("Plaintiff cannot mention a claim without providing factual support for that claim.")

been deprived," and (2) if so, "whether the procedures followed . . . were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). With respect to pretrial detainees, the Court may assume that a liberty interest exists. *See Benjamin v. Fraser*, 264 F.3d 175, 188, 190 (2d Cir. 2001) (holding that the liberty interest analysis under "*Sandin* [*v. Conner*, 515 U.S. 472 (1995)] does not apply to pretrial detainees").

Mr. Shabazz alleges violations of his Fourteenth Amendment procedural due process rights. Mr. Shabazz's due process claims can be understood in three distinct parts: first, his claims arising from his first disciplinary report and hearing for failing to report for transport; second, his claims arising from his appeal of the first disciplinary report; and third, his claims arising from his second disciplinary report for fighting.

Answering the second question, *see Swarthout*, 562 U.S. at 219 ("whether the procedures followed . . . were constitutionally sufficient"), requires analyzing the level of constitutional procedural protection owed, which depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987).

Mr. Shabazz's claims concern disciplinary proceedings, and, for those, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974). There must also be "some evidence" to support the decision to place an inmate in administrative or punitive segregation. *Brown v. Semple*, No. 3:16CV376 (MPS), 2018 WL 4308564, at *12 (D. Conn. Sept. 10, 2018) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (recognizing that procedural due process requires that a decision regarding a prison disciplinary hearing be "supported by some evidence in the record"). And the Second Circuit has explained that a

disciplinary determination must be supported by some "reliable evidence" of guilt. *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020) (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)).

### 1. Mr. Shabazz's First Disciplinary Report and Hearing for Failing to Report for Transport

Mr. Shabazz alleges that multiple actions affected the constitutionality of his first disciplinary report and hearing. For example, Mr. Shabazz alleges that he was denied an opportunity to speak before the hearing officer, Lieutenant Dawson, adjudged him guilty, that his attorney's witness statement was purposefully excluded from the record, and that Investigator Bolduc informed him before the hearing that "if he [] thought he would ever win any disciplinary hearing[,] he was wrong." Am. Compl. ¶¶ 11-20.

The Court takes these allegations as true at this early stage of the litigation. *See Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017) (recognizing that for the purposes of review under Section 1915A(a), "[t]he Court must accept as true all factual matters alleged in a complaint"). With that consideration, Mr. Shabazz's allegations against these Defendants are sufficient to support an inference that he was deprived of a meaningful opportunity to heard at his hearing as required under *Wolff*. *See Edwards v. Arocho*, 125 F.4th 336, 353 (2d Cir. 2024) (concluding that pretrial detainee was deprived of opportunity to heard where correctional staff "brushed [him] off" when the detainee said the video evidence would disprove the alleged violations). Mr. Shabazz's allegations also suggest that the guilty determination was not supported by reliable evidence of his guilt. *Elder*, 967 F.3d at 129 ("[The Second Circuit has] required that . . . disciplinary determinations be supported by some '*reliable* evidence' of guilt." (emphasis in original) (citation omitted)).

8

Mr. Shabazz's allegations do not, however, support the claims against two other Defendants, Commissioner Quiros and Warden Brunelle. Mr. Shabazz seeks only monetary damages, and "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal[,]" or indirect participation, such as "ordering or helping others to do the unlawful acts[.]" *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). "To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

To proceed with his claims against these two Defendants, Mr. Shabazz must allege facts to suggest their "personal involvement" in the alleged constitutional violation. *See Wright*, 21 F.3d at 501; *Provost*, 262 F.3d at 155. But Mr. Shabazz cites only to their supervisory roles over Lieutenant Dawson and Investigator Bolduc, *see* Am. Compl. ¶¶ 23-25, and these roles alone are insufficient to support Mr. Shabazz's claims against Commissioner Quiros and Warden Brunelle, *see Tangreti*, 983 F.3d at 619 ("Tangreti must . . . establish that Bachmann violated the Eighth Amendment by Bachmann's own conduct, not by reason of Bachmann's supervision of others who committed the violation."); *see also Wicker v. Papoosha*, No. 3:24-CV-1640 (VAB), 2025 WL 744273, at *3 (D. Conn. Mar. 7, 2025) (dismissing claims against the defendants where the

9

allegations established no connection between the defendants and the alleged constitutional violations).[5]

Accordingly, Mr. Shabazz's procedural due process claim against two of the Defendants, Dawson and Bolduc, as to the alleged deprivation of Plaintiff's procedural due process rights in connection with the first disciplinary hearing, will proceed, but Mr. Shabazz's claims against two of the Defendants, Quiros and Brunelle, absent amendment, will be dismissed.

### 2. Mr. Shabazz's Appeal of his First Disciplinary Report and Hearing

Mr. Shabazz next alleges that Defendants' failure to respond to his appeal of the disciplinary finding impacted his constitutional rights to due process. *See* Am. Compl. ¶¶ 21-23.

There is no constitutional requirement that state prisons have formal grievance procedures. In *Riddick v. Semple*, 731 F. App'x 11 (2d Cir. 2018), for example, the Second Circuit, in a summary order, rejected a state prisoner's constitutional claim stemming from prison grievance procedures. The court noted that the prisoner's "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right. However, neither state policies nor state statutes create federally protected due process entitlements to specific state-mandated

---

[5] It is for this same reason that Mr. Shabazz's independent claim of supervisory liability against Commissioner Quiros cannot survive. Mr. Shabazz alleges that, "[a]s a direct and proximate cause of Defendant Quiros['s] failure to supervise[,] other supervisors failed to supervise one another and their subordinate(s), creating a culture and custom of not reporting on one another, not subjecting one another to any disciplinary action." Am. Compl. ¶ 58. He continues that, "[a]t all relevant times herein[,] the supervisors mentioned in this Complaint acted under the practice, regulation, custom[,] and usage provided by" Defendant Quiros. *Id.* ¶ 56.

In *Tangreti*, the Second Circuit "joined [several other] circuits in holding that after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). "A supervisor's 'mere knowledge' of a subordinate's unconstitutional behavior is insufficient 'because that knowledge does not amount to the supervisor's violating the Constitution.'" *Taylor v. City of New York*, No. 19 CIV. 6754 (KPF), 2022 WL 744037, at *11 (S.D.N.Y. Mar. 11, 2022) (quoting *Tangreti*, 983 F.3d at 616–17); *see also Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *2 (D. Conn. July 9, 2024) ("Mere awareness of an issue is no longer sufficient to state a claim for supervisory liability."). "The violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

procedures." *Id.* at 13 (summary order) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal quotation marks and ellipsis omitted)); *see also Schlosser v. Manuel*, No. 3:19-cv-1444 (SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly." (collecting cases)).

Because Mr. Shabazz has no constitutional right to prison grievance or appeal procedures, he fails to state a plausible due process claim based on the alleged actions of Defendants related to his appeal. *See Abreu v. Farley*, No. 6:11-CV-06251(EAW), 2019 WL 1230778, at *31 (W.D.N.Y. Mar. 15, 2019) (holding that "any failure to process Plaintiff's administrative appeals does not support a § 1983 cause of action" because "there is no constitutional right to an inmate appeals process" (internal quotation marks, citation, and brackets omitted)); *Cancel v. Goord*, No. 00 Civ. 2042 (LMM), 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (noting that "the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983").

To that same end, Mr. Shabazz's claims against John/Jane Doe—who Mr. Shabazz identifies as the Disciplinary Coordinator responsible for appeals—will be dismissed inasmuch as these claims relate only to Mr. Shabazz's disciplinary appeal. *See* Am. Compl. ¶ 22 (alleging that, "[b]ased upon information and belief, when a prisoner places[] a disciplinary appeal in the unit[']s mailbox for disciplinary appeals, and the box says disciplinary appeals box on the outside, the appeals are delivered by facility staff to the staff that coordinates and[/]or does the appeals and[/]or the defendant Jane/John Doe the disciplinary coordinator").

### 3. Mr. Shabazz's Second Disciplinary Report and Hearing for Fighting

Next, Mr. Shabazz alleges a procedural due process claim related to his second disciplinary report resulting from the attack in his cell. *See id.* ¶¶ 30-33. Mr. Shabazz alleges that after he received the report, Defendant Bolduc visited him in segregation and "threatened to find [him] guilty in the event that he entered a plea of innocence and not guilty and exercised his right to challenge the charge against him." *Id.* ¶ 32. Mr. Shabazz says he was thus "compelled to accept a finding of guilty" despite his belief of his innocence. *Id.*

As with Mr. Shabazz's other allegations, the Court takes these allegations as true. *See Dehany*, 2017 WL 2661624, at *3 (D. Conn. June 20, 2017) (for the purposes of review under Section 1915A(a), "[t]he Court must accept as true all factual matters alleged in a complaint"). And here, too, Mr. Shabazz's allegations against Investigator Bolduc are sufficient to support an inference that Mr. Shabazz's procedural due process rights were impacted under *Wolff*, *see Edwards*, 125 F.4th at 353 (where Defendant allegedly did not review video allegedly disproving misconduct charge, Plaintiff "plausibly alleged that he failed to receive all the process that was due at 'a meaningful time and in a meaningful manner.'"), and that his guilty determination was not supported by reliable evidence of his guilt, *Elder*, 967 F.3d at 129 ("[The Second Circuit has] required that such disciplinary determinations be supported by some '*reliable* evidence' of guilt." (emphasis in original) (citation omitted)).

With respect to this claim, Mr. Shabazz makes no allegations against Lieutenant Dawson. In addition, here, as with before, Mr. Shabazz's allegations do not support a procedural due process claim against Commissioner Quiros and Warden Brunelle because Mr. Shabazz does not allege facts to suggest their "personal involvement" in the alleged constitutional violation. *See Tangreti*, 983 F.3d at 619 ("Tangreti must . . . establish that Bachmann violated the Eighth

Amendment by Bachmann's own conduct, not by reason of Bachmann's supervision of others who committed the violation").

Accordingly, Mr. Shabazz's procedural due process claim in this respect may proceed against Investigator Bolduc, who plausibly was involved in the deprivation of Mr. Shabazz's procedural due process rights.

### B. The Deliberate Indifference to Safety Claims under the Eighth and Fourteenth Amendments

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Walker v. Schult*, 717 F.3d 119, 128 (2d Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)); *see Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Constitutional liability attaches, however, only when a plaintiff can prove that an official acted with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828.

If an alleged attack occurred while someone incarcerated was a pre-trial detainee (as opposed to a sentenced inmate), the Due Process Clause of the Fourteenth Amendment (rather than the Eighth Amendment) governs the analysis. *See City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983) ("[T]he state does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." (*quoting Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977))). That said, "a detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Lara-Grimaldi v. Cnty. of Putnam*, No. 23-0040, 2025 WL 922897, at *14 (2d Cir. Mar. 27, 2025) (quoting *City of Revere,* 463 U.S. at 244).

Mr. Shabazz alleges that the named Defendants failed to protect him from the attack that occurred in his cell on October 17, 2024, which potentially gives rise to a claim of deliberate indifference to safety.

More specifically, Mr. Shabazz's claim focuses on Defendants' alleged failure to intervene after the attack had commenced. *See* Am. Compl. ¶ 27 ("All during the unprovoked attack no staff member was there in the immediate area to stop the plaintiff's aggressor."). And "[a]llowing an attack on an inmate to proceed without intervening is a constitutional violation in certain circumstances." *Early v. Quiros*, No. 3:24-CV-219 (SVN), 2024 WL 3360648, at *5 (D. Conn. July 10, 2024) (quoting *Rosen v. City of N.Y.*, 667 F. Supp. 2d 355, 359 (S.D.N.Y. 2009)).

To prove as much, a plaintiff must make two showings. First, the plaintiff must satisfy the "objective prong," which requires proof that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Second, the plaintiff must satisfy the "subjective prong" with proof "that the officer acted with at least deliberate indifference to the challenged conditions." *Id.*

Here, Mr. Shabazz has alleged facts to support the objective prong. He submits that the attack involved attempted strangulation, which is "sufficiently serious" at this stage. Am. Compl. ¶¶ 28-29; *see Early*, 2024 WL 3360648, at *5 (holding that allegations that the alleged attack was "vicious" were sufficient for initial review purposes).

Mr. Shabazz has not alleged facts, however, to sustain the subjective prong. In the failure to intervene context, Mr. Shabazz must allege facts to show that an officer had "adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself" and yet still "fail[ed] to intervene." *Early*, 2024 WL 3360648, at *5. In his Amended Complaint, Mr. Shabazz offers no allegations that Defendants "'observed or had reason to know'

14

about the ongoing attack and 'had an extended opportunity to stop the attack but failed to take any action to do so.'" *Id.* (quoting *Little*, 2023 WL 8828825, at *10). In fact, his allegations rely on his belief that Defendants did not know the attack was taking place. *See* Am. Compl. ¶ 29 ("As a direct and proximate result of [D]efendants . . . <u>not</u> being in the area and thereby being unable to stop [Mr. Shabazz's] aggressor and protect [Mr. Shabazz], his aggressor was able to leave the cell he lived in and enter [Mr. Shabazz's] cell as he was about to leave the cell (his cell) and and grab [Mr. Shabazz's] neck and started choking [Mr. Shabazz]." (emphasis in original)).

Accordingly, having made no suggestion that Defendants had knowledge of the attack, Mr. Shabazz fails to state a claim on which relief can be granted and, absent a curative amendment, this claim will therefore dismissed.[6]

## IV.   CONCLUSION

For the foregoing reasons, after reviewing Mr. Shabazz's Complaint under 28 U.S.C. § 1915A(b), Mr. Shabazz may pursue damages from Defendants Bolduc and Dawson in their individual capacities for two of his Fourteenth Amendment due process claims.

Mr. Shabazz's claims related to deliberate indifference to safety under the Eighth and Fourteenth Amendments, his Fourteenth Amendment procedural due process claim related to his disciplinary appeal, his supervisory liability claim against Commissioner Quiros, and his state tort law claims will be dismissed without prejudice.

To the extent that the deficiencies identified in this Initial Review Order can be addressed in a Second Amended Complaint, Mr. Shabazz may file one by **May 30, 2025**. If a Second

---

[6] To the extent Mr. Shabazz alleges Defendants failed not only to intervene, but also to prospectively protect Mr. Shabazz from this attack, that claim fails, too. "In cases involving the failure to prevent an attack from another inmate, a prisoner may prove deliberate indifference by showing that the official had actual knowledge of a 'longstanding, pervasive, well-documented, or expressly noted' substantial risk of inmate attacks.'" *Nieman v. Cheney*, No. 3:24-CV-01366 (KAD), 2024 WL 4880710, at *3 (D. Conn. Nov. 25, 2024) (emphasis omitted) (quoting *Farmer*, 511 U.S. at 842-43). Mr. Shabazz makes no allegations suggesting that any of the named Defendants had such knowledge and, therefore, this iteration of the claim cannot survive either.

15

Amended Complaint is not filed by **May 30, 2025**, any claim dismissed by this Initial Review Order will be dismissed with prejudice.

All claims against Defendants Quiros, Brunelle, and John/Jane Doe in their individual capacities will be dismissed.

**ORDERS**

The Court enters the following orders:

(1) The case shall proceed on Mr. Shabazz's Fourteenth Amendment procedural due process claims related to the first and second disciplinary reports against two Defendants, Investigator Bolduc and Lieutenant Dawson in their individual capacities. All other claims are dismissed, including Mr. Shabazz's Fourteenth and Eighth Amendment deliberate indifference to safety claim, his Fourteenth Amendment procedural due process claim related to his disciplinary appeal, his supervisory liability claim against Commissioner Quiros, and his claims brought under state tort law. The Clerk of Court is instructed to terminate the following Defendants: Commissioner Quiros, Warden Brunelle, and John/Jane Doe.

If Mr. Shabazz believes, in good faith, that he can correct the deficiencies of his claims as identified in this Order, Mr. Shabazz may file a second motion to amend with an attached proposed Amended Complaint. He is advised that any Amended Complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference. Any amended complaint must be filed by **May 30, 2025**.

(2) The Clerk of Court shall verify the current work address for Defendants Dawson and Bolduc with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and attachments to him at his confirmed addresses by **May 16, 2025**,

and report on the status of the waiver request by **May 30, 2025**. If a Defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file a response to the Complaint, either an Answer or motion to dismiss, by **August 1, 2025**. If Defendants choose to file an Answer, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **January 9, 2026**. Discovery requests need not be filed with the court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **February 13, 2026**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Mr. Shabazz changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put

17

the new address on a letter without indicating that it is a new address. If he has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

      **SO ORDERED** at New Haven, Connecticut, this 25th day of April, 2025.

                                      /s/ Victor A. Bolden
                                      VICTOR A. BOLDEN
                                      UNITED STATES DISTRICT JUDGE